**HAYMAN CASH REGISTER COMPANY, Talco Cash Register Co., Inc., Stanley Hayman and Hiram M. Tallmadge, Jr., Petitioners,**

v.

**Honorable H. Lee SAROKIN, United States District Judge for the District of New Jersey, Nominal Respondent,**

**Sharp Electronics Corporation, Respondent.**

No. 81–2760.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1981.

Decided Feb. 1, 1982.

Stephen L. Dreyfuss (argued), Hellring, Lindeman, Goldstein & Siegal, Newark, N. J., for petitioners; Bernard Hellring, Newark, N.J., of counsel.

Peter A. Dankin (argued), Lance Gotthoffer, Wender, Murase & White, New York City, and Arthur R. Schmauder, Mary E.

Tracey, Shanley & Fisher, Newark, N.J., for respondent.

Before ADAMS and SLOVITER, Circuit Judges, VAN DUSEN, Senior Circuit Judge.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This petition for a writ of mandamus or prohibition involves the power of a district court to retransfer a case to its original forum after a transfer pursuant to 28 U.S.C. § 1406(a). Because we conclude that the United States District Court for the District of New Jersey did not adequately consider the law of the case doctrine, we hold that the New Jersey district court should vacate its order retransferring the case to the United States District Court for the District of Columbia.

### I. *Procedural History*

In December 1979, plaintiff-respondent Sharp Electronics Corporation ("Sharp") brought this suit in the United States District Court for the District of Columbia, alleging violations of the Sherman Act. The defendants-petitioners are two corporations, Hayman Cash Register Company ("Hayman Company") and Talco Cash Register Co., Inc. ("Talco"), and their presidents, Stanley Hayman and Hiram M. Tallmadge, Jr., respectively. Hayman Company has its principal place of business in the District of Columbia, and Hayman is a resident of Maryland. Talco is a New Jersey corporation, doing business solely in that state, and Tallmadge is a New Jersey resident. Sharp, the plaintiff, is a New York corporation with its principal place of business in New Jersey.

The defendants moved to dismiss the complaint, alleging improper venue, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. The Honorable Charles R. Richey, of the United States District Court for the District of Columbia, concluded that venue was improper in the District of Columbia and dismissed the complaint without reaching the issues of personal jurisdiction or the alleged failure to state a claim upon which relief can be granted.

Sharp then appealed to the United States Court of Appeals for the District of Columbia Circuit, arguing that venue did exist under 28 U.S.C. § 1391 (1976).[1] The court of appeals vacated the judgment of the district court, and remanded to Judge Richey to consider whether transferring the case to New Jersey would be preferable to dismissal. The appellate court "agree[d] with the district court's implicit finding that efficient conduct of Sharp's action would be enhanced by moving it to New Jersey, where most of the parties are located and related lawsuits are in progress," *Sharp Electronics Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C.Cir. 1981).[2]

The Court of Appeals for the District of Columbia Circuit instructed the district court to consider transfer under 28 U.S.C. § 1406(a), which provides:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

28 U.S.C. § 1406(a) (1976). The court of appeals specifically indicated the factors that must be considered by the district court before transferring a case:

"We are aware that such a transfer would require the district court to decide as a preliminary matter that venue and

---

1. This section provides that a "civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

2. Until 1979, Hayman Company and Talco were distributors of Sharp's products, but their relationships were either terminated, as in the case of Hayman Company, or restricted, as with Talco. Hayman Company and Talco brought separate suits in the New Jersey state courts for wrongful termination of all or part of their dealerships. These suits are still awaiting final disposition.

jurisdiction would be proper as to all defendants in the district of New Jersey. . . . We therefore direct the district court to make a determination of these matters."

655 F.2d at 1230 (citations omitted).[3]

On remand, the District of Columbia district court transferred the action to the District of New Jersey. Judge Richey's order of July 1, 1981, explicitly stated his conclusion that "personal jurisdiction and proper venue existed in New Jersey at the commencement of this suit." *Sharp Electronics Corporation v. Hayman Cash Register Company*, No. 79–3268, (D.D.C., filed July 2, 1981).

Upon transfer to the District of New Jersey, the case was assigned to the Honorable H. Lee Sarokin. Sharp then moved the court to retransfer the action to the District of Columbia. Sharp argued that there was no personal jurisdiction in New Jersey over defendants Hayman Company and Hayman when the action was commenced in December 1979. Therefore, Sharp claimed, New Jersey was not a district in which the action "could have been brought," 28 U.S.C. § 1406(a), and the transfer was improper.

In a letter-opinion of October 6, 1981, Judge Sarokin granted Sharp's motion to retransfer. Citing *Hoffman v. Blaski*, 363 U.S. 335, 340 n.9, 80 S.Ct. 1084, 1088 n.9, 4 L.Ed.2d 1254 (1960), the New Jersey district court stated that a transferee court has the power to determine independently whether jurisdiction and venue would have been proper had the case been brought there originally. Finding that there was no personal jurisdiction over Hayman Company and Hayman in New Jersey as of December 1979, the court concluded that New Jersey was not a district in which the action "could have been brought" as required by § 1406(a). Because the case was improperly transferred, Judge Sarokin held, the "only recourse in this situation reluctantly is to retransfer the case to the transferor court." *Sharp Electronics Corporation v.*

*Hayman Cash Register Company*, No. 81–2345, Opinion at 4 (D.N.J., filed Oct. 6, 1981). The New Jersey district court made no findings as to whether the District of Columbia was a district "in which [the suit] could have been brought." 28 U.S.C. § 1406(a).

Defendants then petitioned this court for a writ of mandamus or prohibition vacating Judge Sarokin's retransfer order. Judge Sarokin stayed his order pending this court's decision on the petition for the writ.

Defendants raise two issues in their petition. First, they argue that Judge Sarokin exceeded his power in re-examining the issue of personal jurisdiction over the defendants in New Jersey because this issue had been decided by Judge Richey as a prerequisite to the original transfer. Second, defendants argue that, even if Judge Sarokin had the power to re-examine this issue, he was required under § 1406(a) to determine if the case could have been brought in the District of Columbia before retransferring the suit to that district.

## II. *The Law of the Case*

The District of Columbia court of appeals explicitly directed the District of Columbia district court to make a determination of whether "venue and jurisdiction would be proper as to all defendants in the district of New Jersey." 655 F.2d at 1230. It is clear from Judge Richey's order of July 1, 1981, that he made such a determination, as his order states in full:

"Upon consideration of the defendants' motion to transfer the entire action to the United States District Court for the District of New Jersey and the plaintiff's opposition thereto, and *it appearing to the Court that personal jurisdiction and proper venue existed in New Jersey at the commencement of this suit,* as well as for the convenience of the parties and in the interest of justice, it is, by the Court, this 1st day of July, 1981,

"ORDERED, that this entire action be, and the same hereby is, transferred to the

---

**3.** The court of appeals also stated that if the district court were unable to transfer the entire case, it should consider severance and a partial transfer. 655 F.2d at 1230.

United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406(a)."

*Sharp Electronics Corporation v. Hayman Cash Register Company*, No. 79–3268 (D.D.C., filed July 2, 1981) (emphasis supplied).

Recognizing that the District of Columbia district court "made a preliminary finding that the case could have been brought originally in New Jersey," Judge Sarokin undertook to examine this question anew, relying on language from the Supreme Court. Judge Sarokin stated in his letter-opinion:

"28 U.S.C. § 1406, pursuant to which this transfer was made, requires that a transfer be made to a court in which the action could have been brought originally. The Supreme Court has held that this requirement may be examined independently by the transferee court to determine whether it would have had jurisdiction and venue when the case was originally brought. *Hoffman v. Blaski*, 363 U.S. 335, 340 n.9, 80 S.Ct. 1084, 1088 n.9, 4 L.Ed.2d 1254 (1960)."

*Sharp Electronics Corporation v. Hayman Cash Register Company*, No. 81–2345, Opinion at 1 & 2 (D.N.J., filed Oct. 6, 1981).

▮ Judge Sarokin read *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), as permitting the redetermination by the transferee court of whether it had jurisdiction over a transferred action. This reading of *Blaski* creates an exception to the law of the case doctrine for transfer orders. Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. *See* 1B J. Moore, Federal Practice ¶ 0.404[1] (1980). The purpose of this doctrine is to promote the "judicial system's interest in finality and in efficient administration." *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154, 156 (3d Cir. 1980). If this familiar rule applies to the present suit, then instead of examining the issue of jurisdiction "independently," Judge Sarokin should have deferred to Judge Richey's decision that personal jurisdiction existed in New Jersey over all defendants.

The question before us, then, is whether the usual doctrine of law of the case applies to transfer orders under § 1406(a), or whether the Supreme Court's decision in *Hoffman v. Blaski, supra*, compels a different result.

A.

*Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), involved the interpretation of another transfer provision, 28 U.S.C. § 1404(a), which allows a district court to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." Section 1404(a) uses virtually identical language as the transfer provision here, § 1406(a), in permitting transfer "to any other district or division where [the action] might have been brought." 28 U.S.C. § 1404(a). The major holding in *Blaski*, not disputed here, was that the phrase "where [the action] might have been brought" means a district where the plaintiff had a right to bring the suit originally and does not include those districts in which the defendants consent to jurisdiction or venue. 363 U.S. at 342–44, 80 S.Ct. at 1088–1090. The aspect of *Blaski* that is involved here is contained in footnote 9 of the opinion, 363 U.S. at 340 & n.9, 80 S.Ct. at 1088 n.9. Some background to *Blaski* is necessary to understand that controversial footnote.

Blaski, a resident of Illinois, was one of several plaintiffs in a suit for patent infringement brought against a Texas corporation and a resident of Texas in the Northern District of Texas. On defendants' motion, the district court transferred the action to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." Plaintiffs opposed the transfer on the grounds that venue and personal jurisdiction were both improper in Illinois. Plaintiffs then moved the United States Court of Appeals for the Fifth Circuit for leave to file a petition for a writ of mandamus directing the vacation of the Texas district court's order. The Fifth Circuit denied the motion and the case was trans-

ferred to Judge Hoffman in the Northern District of Illinois.

Once again arguing that neither venue nor personal jurisdiction were proper in Illinois, plaintiffs filed a motion before Judge Hoffman seeking an order remanding the action to Texas. Judge Hoffman denied this motion, but the Seventh Circuit granted plaintiffs' petition for a writ of mandamus directing Judge Hoffman to reverse his order. The Seventh Circuit concluded that the Northern District of Illinois was not a district in which the plaintiffs had a right to bring the suit originally and, therefore, the transfer to Illinois was improper.

Before affirming this conclusion of the Seventh Circuit, the Supreme Court first discussed what issues were not before the Court. The Court stated:

"No claim is made here that the order of the Fifth Circuit denying the motion of respondents [plaintiffs] in the *Blaski* case for leave to file a petition for writ of mandamus, 245 F.2d 737, precluded Judge Hoffman or the Seventh Circuit from remanding that case.[9]

---

"[9] That order did not purport to determine the jurisdiction of the transferee court and therefore did not preclude Judge Hoffman of power to determine his own jurisdiction, nor did it preclude the power of the Seventh Circuit to review his action."

363 U.S. at 340 & n.9, 80 S.Ct. at 1088 & n.9 (citations omitted).

In the present case, the New Jersey district court interpreted this quotation from *Blaski* as allowing the transferee court to redetermine the question of jurisdiction in that court. We note, however, the significant differences between the *Blaski* facts and the facts of this case.

In *Blaski*, neither the transferor court nor the court of appeals for that circuit determined whether venue and personal jurisdiction were proper in the transferee court. In denying leave to file a petition for a writ of mandamus, the Fifth Circuit concluded that such a determination was unnecessary; the court held that a transfer could be made even to a district where the defendant waived venue or personal jurisdiction. Therefore, as the Supreme Court stated in footnote 9, the Fifth Circuit's order "did not purport to determine the jurisdiction of the transferee court." 363 U.S. at 340 n.9, 80 S.Ct. at 1088 n.9.

In the instant case, however, the District of Columbia district court recognized the central holding of *Blaski*—a suit can only be transferred to a district in which the plaintiff had a right to bring the action originally. Unlike in *Blaski*, where the transferor court and its appellate court did not consider whether the plaintiff had a right to sue originally in the transferee court, Judge Richey did consider this issue and found that venue and personal jurisdiction were proper in New Jersey.

█ We conclude that *Blaski* should be interpreted in the context of its own facts and should be read to allow a determination of venue and jurisdiction by the transferee court only when this determination has not previously been made by the transferor court. Therefore, the conclusion in footnote 9 of *Blaski* that the transferee court may determine its own jurisdiction does not apply to this case, and the usual law of the case doctrine should apply instead.

Justice Frankfurter's dissent in *Blaski*, joined in by Justices Harlan and Brennan, provides support for our interpretation of that case. Justice Frankfurter would have reversed the Seventh Circuit's grant of the petition for a writ of mandamus because he disapproved of the Seventh Circuit's re-examination of an issue previously decided by the Fifth Circuit. Unlike the majority's conclusion in footnote 9, Justice Frankfurter's dissent argued that both the Fifth and Seventh Circuits addressed the same broad question—whether "the Northern District of Illinois was a jurisdiction where the action 'might have been brought.'" 363 U.S. at 346, 80 S.Ct. at 1091 (Frankfurter, J., dissenting). The dissenting Justices objected to the "judicial unseemliness" of two courts of equal authority both considering

the exact same issue and reaching contrary conclusions. *Id.*[4]

The dissent would have held that the Seventh Circuit must defer to the earlier decision by the Fifth Circuit. Justice Frankfurter stated:

"I am at a loss to appreciate why all the considerations bearing on the good administration of justice which underlie the technical doctrine of *res judicata* did not apply here to require the Court of Appeals for the Seventh Circuit to defer to the previous decision. 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.' *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525–526, 51 S.Ct. 517, 518, 75 L.Ed. 1244. One would suppose that these considerations would be especially important in enforcing comity among federal courts of equal authority."

*Id.* at 348–49, 80 S.Ct. at 1092 (Frankfurter, J., dissenting).

Justice Frankfurter also pointed to the particular problems involved when the issue considered independently by two courts of appeals is whether an action should be transferred. He noted:

"The course of judicial action now approved by the Court allows transfer over a persisting objection only when concurred in by two sets of courts: those in the place where the case begins, and those in the place to which transfer is ordered. Not only does the place of trial thus remain unsettled for an unnecessarily long time to accommodate double judicial consideration, but, as this case shows, the result of a disagreement between the courts involved is that the litigation cannot go forward at all unless this Court resolves the matter."

*Id.* at 349, 80 S.Ct. at 1092 (Frankfurter, J., dissenting).

We find these arguments persuasive in the context of the instant case. The parties have now argued the preliminary issues of jurisdiction and venue before two district courts and two courts of appeals. To approve Judge Sarokin's independent consideration of the jurisdiction question would permit a further delay in this litigation on the basis of a preliminary matter, as the District of Columbia district court presumably would then consider whether jurisdiction over all defendants exists in that district. But, as Justice Frankfurter has argued, "[s]urely a seemly system of judicial remedies ... regarding controverted trans-

---

**4.** The issue in *Blaski* of whether the action "might have been brought" in the Northern District of Illinois can be seen as encompassing two separate questions. First is the legal question of whether § 1404 requires that the plaintiffs must have the right to bring the suit originally in the transferee court, regardless of the defendants' consent. This issue was addressed independently by both the Fifth and Seventh Circuits; the reconsideration of this legal question is what Justice Frankfurter found objectionable. The second question is the mere factual one of whether the plaintiffs in *Blaski* actually had the right to bring the suit originally in the Northern District of Illinois. The Fifth Circuit did not need to address this issue because of its legal conclusion that the transfer statute did not require that the plaintiffs have the right to bring the suit originally in the transferee court. The majority stressed in foot-

note 9 that, in denying leave to file a petition for a writ of mandamus, the Fifth Circuit did not reach the merits of this factual issue. Therefore, the majority concluded that there was no *reconsideration* of the Fifth Circuit's decision by the Seventh Circuit. *See Skil Corp. v. Millers Falls Co.*, 541 F.2d 554, 557 (6th Cir.), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976).

In the present case, both district courts addressed this second issue of whether Sharp had a right to bring the suit originally in the District of New Jersey. Although both the District of Columbia courts and the District of New Jersey court recognized the governing *Blaski* rule, there was a reconsideration of the question of whether New Jersey "was a jurisdiction where the action 'might have been brought.'" 363 U.S. at 346, 80 S.Ct. at 1091 (Frankfurter, J., dissenting).

fer provisions of the United States Code should encourage, not discourage, quick settlement of questions of transfer...." *Id.*

The Court of Appeals for the Sixth Circuit has similarly distinguished *Blaski* in *Skil Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir.), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976). In *Skil*, the transferor court's order to transfer the action was challenged through an unsuccessful petition for mandamus to the Seventh Circuit. The transferee court then denied a motion to remand, and on interlocutory appeal, the Sixth Circuit affirmed. Concluding that the precise same issue was raised before both courts of appeals, the Sixth Circuit held that it was bound by the Seventh Circuit's decision on the merits that the transfer was valid under the principles of *res judicata* and the law of the case. The court distinguished *Blaski* by noting that the Fifth Circuit, in reviewing the order of the transferor court in *Blaski*, never reached the merits of the transfer but merely denied leave to file a petition for a writ of mandamus.[5]

In discussing the law of the case, the *Skil* court quoted from Professor Moore:

"[S]uppose the district court orders a transfer of the action. If this order is then reviewed by an appellate court on the merits, sustained, and the transfer accordingly effected, the transferee-district court should accept the ruling as the law of the case for it, and there should be no further transfer except under the most impelling and unusual circumstances. (IV J. Moore, Federal Practice ¶ 0.404(8) at 531–32 (2d ed. 1974) [footnotes omitted] )"

541 F.2d at 558.[6]

## B.

In concluding that *Hoffman v. Blaski* should be distinguished, and that traditional law of the case principles should govern the propriety of a transfer order, we find guidance in other Third Circuit cases holding that "judges of co-ordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other." *TCF Film Corporation v. Gourley*, 240 F.2d 711, 713 (3d Cir. 1957) *citing Price v. Greenway*, 167 F.2d 196, 199–200 (3d Cir. 1948); *Jurgenson v. National Oil & Supply Co.*, 63 F.2d 727, 729 (3d Cir. 1933). The purpose of this rule is "to preserve the orderly functioning of the judicial process." *TCF Film Corporation v. Gourley*, 240 F.2d at 714.

■ This "rule of judicial comity," *id.*, should similarly apply to the propriety of transfer orders between two courts. Once the transferor court has decided the issue of whether the suit "could have been brought" in the transferee court, 28 U.S.C. § 1406(a), this ruling becomes the law of the case. If the party opposing the transfer believes the decision is erroneous, it can either seek reconsideration in the transferor court,[7] or

---

5. Judge Adams of this court, sitting with the Sixth Circuit by special designation, dissented in *Skil* on the ground that the issue before the Sixth Circuit was not the same as that decided by the Seventh Circuit. He concluded that under the applicable standard of review in a mandamus proceeding in the Seventh Circuit, that circuit had not reached the merits of the transfer order. Therefore, Judge Adams would have held that neither *res judicata* nor the law of the case limited the Sixth Circuit's consideration of the merits on interlocutory appeal.

Judge Adams' dissent in *Skil* is not immediately applicable to the instant case because in this case the District of Columbia district court and the New Jersey district court both decided the same issue under the same legal standards.

6. Both the majority and the dissent in *Skil* considered whether the transfer order permit-

ted by one court of appeals was the governing law of the case in a second court of appeals. The question here is whether the decision by one district court to transfer a case is binding on another district court, and we find that the same principles apply. As Professor Moore states, even when no appellate review of the transfer order is sought, the transfer order "establishes the law of the case for the transferee-district court, which it should normally adhere to in the interest of allowing the litigation to proceed and not become enmeshed in a shuttle process." 1B J. Moore, Federal Practice ¶ 0.404[8], at 534–35 (2d ed. 1980) (footnotes omitted).

7. *See United States v. Wheeler*, 256 F.2d 745, 747 (3d Cir.), *cert. denied*, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958) (stressing that

else petition for a writ of mandamus in the court of appeals of the circuit in which the transferor court is located. *See Starnes v. McGuire*, 512 F.2d 918, 925 (D.C.Cir. 1974) (en banc); *Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973). A disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances.

■ Adherence to law of the case principles is even more important in this context where the transferor judge and the transferee judge are not members of the same court. Here, the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority. *See Hoffman v. Blaski*, 363 U.S. 335, 348–49, 80 S.Ct. 1084, 1092, 4 L.Ed.2d 1254 (1960) (Frankfurter, J., dissenting); *Chicago & N.W. Transp. Co. v. United States*, 574 F.2d 926, 930 (7th Cir. 1978).[8]

■ In applying law of the case principles to transfer decisions, we are not entirely removing the question of the propriety of the transfer order from the transferee court. As this court has noted, the doctrine "expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Zichy v. City of*

*Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979), *quoting Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). A judge need not follow a previous decision on the same issue in the same case if "unusual circumstances" exist that permit a different conclusion. *See Evans v. Buchanan*, 555 F.2d 373, 378 (3d Cir.), *cert. denied*, 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977).

Several commonly recognized exceptions to the doctrine of law of the case permit reconsideration of an issue previously decided in the same case. For example, this court has recently held that a successor judge may entertain a timely motion to reconsider the conclusions of an unavailable predecessor, because otherwise the right to move for reconsideration would be effectively denied. *United States Gypsum Company v. Schiavo Brothers, Inc.*, Nos. 81–1168, 81–1272, & 81–1273, slip op. at 8–9 (3d Cir. Nov. 30, 1981); *see TCF Film Corporation v. Gourley*, 240 F.2d 711, 714 (3d Cir. 1957).[9] Another exception exists if new evidence is available to the second judge when hearing the issue. In this situation, "the question has not really been decided earlier and is posed for the first time; the second judge ought, therefore, to be free to render a decision." *United States v. Wheeler*, 256 F.2d 745, 748 (3d Cir.), *cert. denied*, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958). *See also Zenith Laboratories, Inc. v.*

"if the first judge is available the matter should again be presented to him").

8. For a thoughtful discussion of why law of the case principles should apply in the context of a motion to retransfer, see *Gulf Research & D. Co. v. Schlumberger Well Sur. Corp.*, 98 F.Supp. 198 (D.Del.), *mandamus denied sub nom. Gulf Research & Development Co. v. Leahy*, 193 F.2d 302 (3d Cir. 1951), *aff'd by an equally divided Court*, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952). Chief Judge Leahy, the transferee judge, stated in denying the plaintiffs' motion to retransfer:

"It is not only the principle of comity and the fact that Judge Harrison's [the transferor judge's] opinion may be likened, at this stage, to the 'law of this case' which compels me to this conclusion, but, what seems of most importance to me are considerations for the

orderly functioning of the judicial process. If I should grant plaintiffs' motion and say, in effect, to Judge Harrison, 'You were wrong in transferring this case to Delaware,' I do not think he, in turn, would be any more bound to take and try the case on the merits, thereby respecting my views, than I had shown myself to be in ignoring his considered judgment. If both Judge Harrison and I were obdurate in our positions, this case could conceivably shuttle back and forth interminably between California and Delaware. Such an eventuality should be avoided."

98 F.Supp. at 201.

9. This exception apparently does not apply to this case; plaintiff could have moved for reconsideration before Judge Richey but declined the opportunity.

Carter-Wallace, Inc., 530 F.2d 508, 512 (3d Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); DiFrischia v. New York Central Railroad Company, 279 F.2d 141, 144 (3d Cir. 1960).

A third exception to the law of the case doctrine is that every court "had a duty to apply a supervening rule of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case." Zichy v. City of Philadelphia, 590 F.2d 503, 508 (3d Cir. 1979). See also Ratay v. Lincoln National Life Insurance Co., 405 F.2d 286, 288 (3d Cir. 1968).[10]

## C.

We conclude that Judge Sarokin improperly interpreted Blaski to allow an independent examination by the transferee court of whether the action could have been brought there originally. We hold that the decision of the transferor court that the suit could have been brought in the transferee court is the law of the case and should not be reconsidered except in unusual circumstances. We will, therefore, grant the petition. Judge Sarokin should instead address the plaintiff's motion to retransfer in light of Judge Richey's previous decision that the action could have been brought in the District of New Jersey. Unless one of the exceptions discussed in part B, supra, applies here, the law of the case should result in a denial of the motion to retransfer.

## III. Retransfer under § 1406(a)

Defendants also argue that the writ of mandamus must issue because Judge Sarokin lacked statutory authority to retransfer the action without deciding first if the District of Columbia was a district in which the action "could have been brought." 28 U.S.C. § 1406(a). Because we hold that Judge Sarokin should vacate his retransfer order for the reasons stated in part II, supra, we need not decide this second issue raised by defendants.

## IV.

As indicated in part II-C, supra, we grant the defendants' petition. We know that Judge Sarokin "will fully effectuate these views without the necessity of our entering any formal order. Petitioners may, however, apply to this court for a formal order directing the issuance of the writ of mandamus if the need therefor should arise."[11]

---

10. Several courts also recognize another major reason why the law of the case doctrine may not apply. The Fifth Circuit has held that the first decision need not be followed in all subsequent proceedings if "the decision was clearly erroneous and would work a manifest injustice." White v. Murtha, 377 F.2d 428, 431–32 (5th Cir. 1967). This "clearly erroneous" exception has been adopted by several circuits, see e.g., Chicago & N.W. Transp. Co. v. United States, 574 F.2d 926, 930 (7th Cir. 1978); Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co., 578 F.2d 727, 730–31 (8th Cir. 1978); Petition of U.S. Steel Corporation, 479 F.2d 489, 494 (6th Cir.), cert. denied, 414 U.S. 859,

94 S.Ct. 71, 38 L.Ed.2d 110 (1973). But "[t]his court has not yet recognized such an exception to the law of the case doctrine." Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 157 n.4 (3d Cir. 1980). This question of whether the law of the case doctrine would prevent reconsideration of an issue even if the initial determination of such law were clearly erroneous was not argued before this court, and we need not decide it in reaching our decision to issue the writ of mandamus.

11. See Rapp v. Van Dusen, 350 F.2d 806, 814 (3d Cir. 1965).